UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT D. GIBBENS                                   CIVIL ACTION

VERSUS                                              NO. 13-6401 C/W
                                                    14-288

QUALITY RENTAL TOOLS, INC.                          SECTION "E" (3)

## ORDER

On October 22, 2014, the Motion for Protective Order [Doc. #99], the Motion to Quash and for Protective Order [Doc. #104], and Basin Holdings US LLC and Black Diamond Oilfield Rental LLC's  Motion to Compel Quality Rental Tool, Inc.'s Discovery Responses and for Costs and Attorney's Fees [Doc. #109] came on for oral hearing before the undersigned.  Present were Jerome Moroux on behalf of plaintiff, Gerald deLaunay on behalf of Quality Rental Tools, Inc., and Ian Macdonald on behalf of Basin Holdings US, L.L.C. and Black Diamond Oilfield Rentals, L.L.C. After the oral hearing, the Court took the motions under advisement.  Having reviewed the motions, the oppositions and the case law, the Court rules as follows.

## I.    Background

The complaint and Gibbens' motion to disqualify counsel allege as follows.  Plaintiff Robert Gibbens signed an employment contract with Quality Rental Tools ("QRT"), an oilfield tool rental company based in Houma, Louisiana, in September 2005. Frank Clements, the sole owner and

shareholder for QRT, ran the day-to-day business of the company.  QRT has an inventory of oil field

tools that it rents out to various oil companies; QRT also employs salesman to negotiate the rentals.

Over the course of Gibbens' time with the company, QRT began to entertain offers from various

suitors to buy the company.  In the spring of 2012, Basin Holding, L.L.C. ("Basin"), a company out

of New York, expressed its interest in purchasing QRT.  In advance of the sale, QRT's financial

inventory was taken, projected revenues were perfected, and revenue streams were reckoned.  From

approximately March to late May 2012, Gibbens, defense counsel Gerald deLaunay and Frank

Clements – as well as Clements' CPA – were the key figures working to negotiate the deal.

In May 2012, Basin submitted an offer to buy QRT.  deLaunay took the lead in evaluating

the offer and made a counter offer to Basin.  deLaunay formulated and submitted a counter-offer

wherein he asserted that while QRT was valued at $21 million, if its debt was taken into account,

the company was valued at "$17MM exclusive of the intellectual property and the plant."  Because

the parties could not agree on a price, the Basin deal fell through.  Immediately after the negotiations

terminated, Gibbens began secretly negotiating with Basin for the purpose of starting a new business

venture to carry out a development project on which Gibbens had been working for QRT for several

years.  Basin and Gibbens eventually agreed on terms and formed Black Diamond Oilfield Rentals,

L.L.C. ("Black Diamond"). On July 16, 2014 Gibbens resigned from QRT.

Gibbens' contract with QRT allowed him to leave the company at any time. The contract also

required QRT to pay Gibbens a percentage of QRT's valuation at Gibbens' departure. Gibbens and

QRT agreed to have an independent valuator calculate QRT's value and thus determine Gibbens'

compensation.

Based on the contractual provision, QRT retained independent valuator Marjorie Corcoran.

Frank Clements proposed to Gibbens that the valuation of QRT would be QRT's value as of June 30, 2012. In August 2012, Corcoran conducted an interview with Clements and his accountant Charles Theriot. Fortunately for Gibbens, Corcoran recorded the entirety of the conversation.

When meeting with Corcoran, Clements made material and intentional misrepresentations about the value of his company. Specifically, Clements unequivocally told Corcoran that the company's most valuable client, Chevron, would cease doing business with QRT as of January 1, 2013. Although QRT was still receiving revenue through Chevron by virtue of its role in an affiliated corporation NAMCO – and indeed has continued to do so as of this day – Clements affirmatively mislead Corcoran, declaring that the Chevron business with NAMCO would cease as of December 31, 2012. Nolmar, a corporation headed by an African-American woman, owns 53 per cent of NAMCO, and QRT owns 47 per cent.

The veracity of these assertions go directly to the heart of Gibbens' case against defendants. Notwithstanding the incredulity of Clements' assertion that the entity through which QRT received over 40% of its annual revenue was to cease for no reason, Gibbens is in possession of correspondence from deLaunay which indicates that in July 2012, 1) there was no indication that Chevron was going to stop doing business as of January 1, 2013 and 2) that Clements, QRT and Nolmar were working toward tidying up the particulars of its corporate structure.

After Gibbens resigned, he made demand and ultimately sued QRT in state court for what is described as an "equity value payment." Gibbens claims that under his employment contract, he was entitled to an equity value payment which QRT refuses to pay. QRT has denied any obligation to pay Gibbens because, as QRT alleges in its counterclaim against Gibbens, Basin and Black Diamond, Gibbens breached his employment by his secret dealings with Basin. QRT alleges that

these parties have wrongfully used confidential information obtained during the course of the negotiations between QRT and Basin. Basin had executed a confidentiality agreement which prohibited its use of confidential information for any purpose other than consideration of the transaction with QRT.  QRT ultimately removed the lawsuit to this Court.

## II.     The Motion for Protective Order

Basin and Black Diamond (collectively, "counter-defendants") seek a protective order to prohibit the use outside the litigation of documents concerning their operations and finances.  The protective order maintains the confidentiality of the records and places the burden on the party seeking to maintain the confidentiality to obtain the Court's protection in the event that the parties are unable to agree on the confidentiality.

QRT argues that counter-defendants have failed to show good cause for a protective order because they have failed to point to any specific documents.  QRT contends that such a failure weighs against the issuance of a blanket protective order.

QRT also maintains that the protective order allows any party, even third parties, the right to designate a document as confidential without a showing of good cause.  It also shifts the burden to the party challenging any designation of confidentiality.  As an example, QRT notes that when counter-defendants produced 4,000 pages of documents, they designated each one as confidential, even though many of them are publicly available.  QRT argues that the protective order, as worded, will result in more legal disputes and motion practice before this Court.

QRT notes that the protective order also includes Frank Clements, one of QRT's principals, as bound by the protective order even though the principals of counter-defendants are not included. QRT also lodges specific objections to Sections 16, 18, 19, 21, 22, 25, 26, 30, 32, and 33 of the

proposed protective order.

In their reply, counter-defendants note that the 4,000 documents that they designated as confidential were communications between QRT and Basin.  They maintain that had they not done so, QRT would now be complaining that they had not.

Counter-defendants also submit that Clements is a party to the action and must be bound by the protective order.  They argue that every party is treated the same.

Counter-defendants contend that Sections 16 and 18 merely allow disclosure of the information while protecting the parties' interest pending an agreement or a court order.  They argue that Section 19 is necessary because many of the experts in this lawsuit will be individuals who compete with either QRT or counter-defendants.

Counter-defendants maintain that they have not waived their claim to confidentiality in the produced records.  They note that they produced the documents in anticipation of the parties' agreement as to a protective order or a court order.

For the following reasons, the Court denies the motion.  Federal Rule of Civil Procedure 26(c) establishes the standard for evaluating a request for a protective order.  Under Rule 26(c), a court, "upon good cause shown . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." *See* Fed. R. Civ. P. 26(c).

The good-cause requirement of Rule 26(c) demonstrates that the burden is on the movant to show the necessity for the issuance of a protective order.  The rule "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." Fed. R. Civ. P. 26(c)(5); *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); *see also* 8

Charles Alan Wright et al., Federal Practice and Procedure.

Counter-defendants have not provided the Court with a specific demonstration of fact here. They simply seek a blanket protective order. That does not satisfy the good-cause requirement under the case law. In addition, the Court finds that the protective order, as currently worded, imposes an undue burden on the parties and the Court. For example, Section 19 – as it can be interpreted – provides that a party can not engage an expert or consultant without first requesting the other party's permission. There is no authority in the case law or the rules for such a provision.

Notwithstanding the denial of this protective order, the Court notes that QRT asserted at the oral hearing that it is not adverse to entering a protective order. As counsel stated, QRT is entirely amenable to entering a protective order that essentially limits the knowledge of confidential documents to its counsel's office and its experts and that it will not use the documents outside of this litigation. Accordingly,

**IT IS ORDERED** that counsel meet and confer **no later than fourteen (14) days from the date of this Order** to confect a mutually-agreeable **and simple** protective order that conforms to the dictates outlined above.

## III.  The Motion to Quash and for Protective Order

Counter-defendants issued a subpoena that seeks a production of documents from Gerald deLaunay, QRT's counsel, and Charles Theriot, QRT's certified public accountant. QRT notes that the availability of a privilege in a diversity case is governed by state law. Citing articles from the Louisiana Code of Evidence, QRT maintains that the communications here are privileged, and the issuance of a subpoena is prohibited until and unless, after a contradictory hearing, the court determines that the information sought is not protected from disclosure.

QRT contends that counsel for counter-defendants knows the information that he seeks is protected by the privilege and issued the subpoenas to harass QRT.  It thus asks the Court to quash the subpoenas and enter a protective order that prohibits counter-defendants from pursuing such discovery in the future.

Counter-defendants contend that deLaunay and Theriot were intimately involved in the negotiations between QRT and Basin.  They note  that deLaunay has informed them in the past that he has withheld nothing as protected by a privilege and has not produced a privilege log.

Counter-defendants maintain that communications that involve underlying facts or that are not in furtherance of obtaining or rendering legal advice but address transacting and/or negotiating business agreements do not implicate the privilege.  Counter-defendants also note that placing the privilege at issue results in waiver.

Counter-defendants note that Request Nos. 2-5 seek documents reflecting communications between deLaunay and Theriot and third parties.  Thus, they maintain, the privilege is not implicated.

Request Nos. 6, 9, 10, and 11 seek communications by deLaunay and Theriot as business consultants/partners in the QRT/Basin transaction, and thus, they argue, do not implicate privilege.

And Request Nos. 1, 7, 8, and 12 address information that QRT has placed at issue in this lawsuit.  Counter-defendants maintain that the information is central to QRT's claims that Basin did not negotiate in good faith and whether they were aware of the business relations with which they allegedly interfered.

With regard to Request Nos. 2-5, the Court denies the motion.  The Court finds that the attorney-client privilege is not implicated with regard to communications to third parties.

With regard to Request Nos. 6, 9, 10, and 11, the Court also denies the motion subject to the caveat outlined below.  It appears that these requests seek communications only involving the Basin/QRT business transaction and would thus not implicate the attorney-client privilege. *See Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977) ("If the primary purpose of a communication is to solicit or render advice on non-legal matters, the communication is not within the scope of the attorney-client privilege. Only if the attorney is 'acting as a lawyer' giving advice with respect to the legal implications of a proposed course of conduct may the privilege be properly invoked. In addition, if a communication is made primarily for the purpose of soliciting legal advice, an incidental request for business advice does not vitiate the attorney-client privilege.").  However, should counsel for QRT determine that a communication addresses the legal implications of a proposed course of conduct, counsel may include said communication in the privilege log required below.

With regard to Request Nos. 1, 7, 8, and 12, the Court grants the motion.  The Court recognizes that waiver of the attorney-client and/or work-product privileges may occur when a party places privileged communications "at issue." This means more than simply that the client's communications with his lawyer have been referred to in litigation or that they may be relevant to the subject matter of the litigation.  In Louisiana, "placing at issue" waiver means that the waiving party "'pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail. Consequently, he places at issue and waives his privilege as to communications on the same subject under his control.'"  *Dixie Mill Supply Co. v. Continental Cas. Co.*, 168 F.R.D. 554, 555-56 (E.D. La. 1996) (quoting *Smith v. Kavanaguh, Pierson & Talley*, 513 So.2d 1138, 1145 (La. 1987)).

"A litigant's pleading of a claim or defense to which his attorney-client communications are relevant does not by such pleading alone waive his attorney-client privilege." *Smith*, 513 So.2d at 1141 (emphasis added); *accord Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (citing traditional principles of attorney-client privilege and holding that attorney advice "is not in issue merely because it is relevant, and does not necessarily become an issue merely because the attorney's advice might affect the client's state of mind in a relevant manner"). Thus, "placing at issue" waiver does not depend on the relevance of the privileged communications or on the adversary's need, no matter how strong, for the privileged matters. *Stumpf v. Stumpf*, 613 So.2d 683, 685 (La. Ct. App. 5th Cir. 1993) (citing *Smith*, 513 So.2d at 1146). Instead, this kind of waiver occurs only when the party waiving the privilege has "'committed himself to a course of action that will require the disclosure of a privileged communication.'" *Id.* (quoting *Smith*, 513 So.2d at 1146). A waiver must be founded on an affirmative act by the privilege holder that creates some further detriment to the truth-seeking process in addition to that already taken into account in the creation of the privilege itself. *Smith*, 513 So.2d at 1143 (citations omitted).

In *Smith*, the Louisiana Supreme Court ratified the concept of "at issue" waiver because of the unfairness that would arise from permitting a client to insist on the privilege when he intends to use privileged information at trial. *See generally id.* at 1143-45. However, then Justice, now United States Circuit Judge, James Dennis, writing for the Court, rejected an overly-broad formulation of "at issue" waiver, adopted by some courts, that premises waiver on the relevance of the privileged information to the privilege holder's opponent and on the opponent's vital need for the material. *Id.* at 1145-46. Waiver occurs only when the privilege holder "will be forced inevitably to draw upon a privileged communication at trial in order to prevail." *Id.* at 1145.

9

Thus, to determine whether QRT has waived the privilege concerning its communications with deLaunay or Theriot, this Court must focus on (1) whether it had already revealed privileged communications and (2) its intended use of its protected communications with deLaunay or Theriot, if any, *i.e.*, whether QRT has "committed [itself] to a course of action that will require the disclosure of a privileged communication," *id.* at 1146, and not on defendants' alleged need for the testimony of a non-party like deLaunay or Theriot to resolve any dispute.

Counter-defendants have not met this burden here. There is no evidence that QRT has disclosed any privileged communication, and there is no evidence at this time that QRT has committed itself to a course of conduct that will require the use of any privileged communication at trial. The Court recognizes that this may change, however, and orders counsel for QRT to include any document withheld on the ground of privilege in a privilege log that must be produced within the deadlines allowed for by the law.

## IV. Basin Holdings US LLC and Black Diamond Oilfield Rental LLC's Motion to Compel Quality Rental Tool, Inc.'s Discovery Responses and for Costs and Attorney's Fees

On August 25, 2014, counter-defendants propounded a supplemental request for production of documents on QRT, which failed to respond by September 24, 2014. They ask the Court to order QRT to respond and seek their attorney's fees and costs.

In a supplemental memorandum, counter-defendants note that QRT responded on October 16, 2014, the day after they had filed the motion to compel. They contend that because QRT failed to respond timely, it has waived all objections. They ask the Court to order QRT to respond without objection and again to award them their attorney's fees and costs.

QRT first contends that there was no Rule 37 conference. deLaunay returned to the office after a week-long vacation on October 13. That same day, counsel for counter-defendants, Ian

McDonald, called him and reminded him that there was outstanding discovery.  deLaunay knew of

no outstanding discovery, and McDonald forwarded him another copy.  There was no discussion of

a discovery dispute or when the responses were due.  deLaunay completed the responses to the 47

discovery requests in 48 hours and forwarded them to McDonald, the day after McDonald had filed

this motion.  McDonald had mailed deLaunay a letter on October 6, knowing that deLaunay was on

vacation.  QRT argues that counter-defendants never attempted to confer and resolve the motion

under Rule 37.  Citing case law, it notes that more is required than just reminding the other party that

there is outstanding discovery.

The Court finds that the extenuating factual circumstances underlying this dispute – in short,

the lack of clarity in communications between counsel – constitutes good cause here and will find

no waiver.  "District courts have considerable discretion in managing discovery."  *Munoz v. Orr*,

200 F.3d 291, 305 (5th Cir. 2000) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 789 (5th Cir.

1990)).  Courts considering similar arguments have noted that imposing the sanction of waiver of a

privilege for the failure of a party to timely produce a privilege log is a "draconian remedy" and

must be warranted under the specific facts of the case. *See Greer v. Lowes Home Ctrs., Inc.*, No. Civ.

A. 05-0322, 2006 WL 220823, *2 (W.D. La. Jan. 6, 2006); *Woodland v. Nalco Chem. Co.*, No. Civ.

A. 01-3337, 2003 WL 22928808 (E.D. La. Dec. 8, 2003); *Stevens v. Omega Protein, Inc.*, No. Civ.

A. 00-3326, 2002 WL 1022507 (E.D. La. May 16, 2002).  The Court finds that it is not warranted

here.

In addition, QRT notes that it withheld all documents after June 30, 2012 in reliance on this

Court's earlier order in which it held that all documents after that date are not reasonably calculated

to lead to the discovery of admissible evidence.  While the Court set the June 30, 2012 date with

regard to discovery requests of *plaintiff*, the Court sustains this objection to the extent that the documents are not relevant to QRT's claim for damages.  If any document created after June 30, 2012 is relevant to its claim for damages, however, it must be produced.

QRT also raised specific objections to Request for Production ("RFP") Nos. 44 through 47. With regard to RFP No. 44, which seeks all Board resolution documents and minutes of meetings from January 2011 through the present, the Court sustains the objection except as to those specific Board documents that are relevant to the claims in dispute in this litigation.

With regard to RFP Nos. 45, 46, and 47, the Court also sustains the objections.  Counter-defendants may propound the discovery requests on the specific individuals from whom discovery is sought.

## IV.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that the Motion for Protective Order [Doc. #99] is DENIED at this time. The parties shall proceed as outlined above.

**IT IS FURTHER ORDERED** that the Motion to Quash and for Protective Order [Doc. #104] is GRANTED IN PART and DENIED IN PART as outlined above.

**IT IS FURTHER ORDERED** that Basin Holdings US LLC and Black Diamond Oilfield Rental LLC's  Motion to Compel Quality Rental Tool, Inc.'s Discovery Responses and for Costs and Attorney's Fees [Doc. #109] is DENIED.

**IT IS FURTHER ORDERED** that all requests for attorneys' fees and costs are DENIED.

New Orleans, Louisiana, this 24th day of October, 2014.

12

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

13