UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT GIBBENS,**     Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-6401**         **c/w 14-288** |
| **QUALITY RENTAL TOOLS, INC., ET AL.,**     Defendants | **SECTION: "E" (3)** |

*Applies to: Both Cases*

### ORDER AND REASONS

This is a civil action originally filed in state court by Robert Gibbens against Quality Rental Tools, Inc. ("QRT"). QRT removed the case and asserted a counterclaim against Gibbens, Basin Holdings US, LLC ("Basin"), and Black Diamond Oilfield Rentals, LLC ("Black Diamond").[1]

Gibbens has moved to disqualify lead counsel for QRT, Gerald deLaunay ("deLaunay").[2] Basin and Black Diamond have filed a similar motion.[3] QRT opposes the motions and has separately moved to strike Exhibits 1 and 5—attached to Gibbens's motion—on the basis of attorney-client privilege.[4] With respect to the motions to disqualify, the questions presented are whether deLaunay is a necessary witness at trial, and, if so, whether he should be disqualified from trial *and* pre-trial proceedings. With respect to the motion to strike, the issue is whether QRT has waived any assertion of

---

[1] Gibbens added Basin and Black Diamond as counterclaim defendants under Federal Rule of Civil Procedure 13(h).
[2] R. Doc. 26.
[3] R. Doc. 27.
[4] R. Doc. 34. QRT has also moved for a protective order. QRT devotes exactly two sentences to its request for a protective order, neither of which cites any legal authority. This gaunt "argument" is so devoid of substance that the Court will not consider it here. QRT may request a protective order by filing a properly supported motion before the magistrate judge.

1

attorney-client privilege. For the following reasons, the Motions to Disqualify are DENIED WITHOUT PREJUDICE and may be re-urged at a later date closer to trial. The Motion to Strike is GRANTED IN PART, and Exhibit 1 to Gibbens's Motion is STRICKEN from the record.

## BACKGROUND[5]

Gibbens signed an employment contract with QRT in 2005, which guaranteed a severance payment tied to the value of QRT at the time of separation (the "Severance Agreement"). In February 2012, QRT and Basin entered into negotiations for the sale of QRT. Those negotiations were governed by a confidentiality agreement (the "Confidentiality Agreement.").

On April 29, 2012, Basin offered to purchase QRT for $13,750,000 (the "Basin Offer"). QRT submitted a counteroffer. Negotiations eventually fell through.

On July 16, 2012, Gibbens terminated his employment with QRT. QRT C.E.O. Frank Clements, Sr. ("Clements") subsequently engaged Majorie Corcoran, CVA ("Corcoran") to determine the value of QRT. Corcoran issued a report valuing QRT at $8,040,000.

Gibbens alleges this valuation is based on an erroneous assumption that QRT will lose revenues currently derived from NAMCO Pipe & Supply, L.L.C. ("NAMCO"), a company in which QRT owns a 43% interest.[6] Gibbens alleges Clements intentionally misled Corcoran in order to reduce the amounts owed under the Severance Agreement. Gibbens subsequently filed suit against QRT and Clements.[7]

---

[5] The following facts are drawn primarily from the pleadings and do not constitute findings by the Court.
[6] NAMCO is jointly owned by QRT and another company called "Nolmar." NAMCO has developed a business relationship with Chevron. QRT receives a significant portion of the revenues generated from this relationship.
[7] Gibbens amended his state-court petition and dropped Clements as a party defendant.

QRT removed the case, answered, and asserted a counterclaim. QRT alleges Gibbens misused confidential information to form a new business venture with Basin, eventually called "Black Diamond." QRT further alleges Basin violated the Confidentiality Agreement.

## DISCUSSION

Gibbens, Basin, and Black Diamond have moved to disqualify deLaunay. QRT has separately moved to strike two exhibits attached to Gibbens's motion. The Court addresses each motion in turn.

I.  Motions to Disqualify

Motions to disqualify in the Fifth Circuit are governed by state and national ethical standards.[8] At least four ethical canons are relevant: (1) the Local Rules for the Eastern District of Louisiana; (2) the American Bar Association's Model Rules of Professional Conduct ("Model Rules"); (3) the ABA's Model Code of Professional Conduct ("Model Code"); and (4) the Louisiana Rules of Professional Conduct ("Louisiana Rules").[9] The local rules "are the most immediate source of guidance for a district court."[10]

Gibbens, Basin, and Black Diamond contend deLaunay will be a necessary witness at trial. They claim deLaunay was a "key player" in (1) the valuation of QRT leading up to Gibbens's departure, and (2) the decision-making process concerning the future of NAMCO. Accordingly, they contend deLaunay must be disqualified from representing QRT.

---

[8] *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)
[9] *See Horaist v. Doctor's Hosp. of Opelousas*, 255 F.2d 261, 266 (5th Cir. 2001).
[10] *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995).

3

This Court's Local Rules have adopted the Louisiana Rules.[11] Louisiana Rule 3.7(a) provides as follows:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

The Model Rule counterpart is identical.[12] The Model Code is substantially similar:

> "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial . . . except that he may continue the representation and . . . testify in the circumstances enumerated in DR 5-101(B)(1) through (4)."[13]

"It is worth noting that the Model Rules superceded [sic] the Model Code."[14] Thus, the continued relevance of the Model Code is dubious.[15]

---

[11] LR 83.2.3.
[12] *See* Model Rules of Prof'l Conduct 3.7.
[13] Model Code of Prof'l Responsibility DR 5-102. The circumstances enumerated in DR 5-101(B)(1) through (4) are:

> (1) If the testimony will relate solely to an uncontested matter.
>
> (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
>
> (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
>
> (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."

[14] *P & J Daiquiri Café, Inc. v. Andrew K. Knox & Co.*, No. 07-6617, 2008 WL 731030, at *2 (E.D. La. Mar. 17, 2008).

The argument for disqualification fails for several reasons. First, it is unclear at this early stage of litigation whether deLaunay is likely to be a necessary witness at trial. "A lawyer is not 'likely to be a necessary witness' when evidence pertaining to each matter to which he could testify is available from another source."[16] Other sections of this Court also have considered whether the attorney's testimony will be material to the issues being litigated and whether the testimony will be prejudicial to the attorney's client.[17]

As a preliminary matter, deLaunay's testimony regarding the valuation of QRT may not be material to this litigation. Gibbens has not asserted a claim against deLaunay. Rather, the allegation is that Clements intentionally misled Corcoran as to the fair market value of QRT.[18] Thus, the principal issues for trial will be (1) whether Clements provided false information to Corcoran and, if so, whether he acted in bad faith, and (2) whether Corcoran's valuation of QRT was accurate. deLaunay's testimony may be only marginally relevant to these issues.

Even assuming the information deLaunay could provide is material, it is unclear whether that information could be gleaned from other sources. The discovery deadline is over three-and-a-half months away. Further discovery will reveal the nature of deLaunay's potential testimony and whether that testimony is cumulative of testimony from other witnesses.[19]

---

[15] *Id.* Indeed, when confronted with a motion to disqualify, the vast majority of courts in this District have greatly marginalized or entirely omitted any discussion of the Model Code.
[16] *United States v. Starnes*, 157 F. App'x 687, 693–94 (5th Cir. 2005) (quoting *Horaist*, 255 F.3d at 267).
[17] *See, e.g.*, *Douglas v. Valteau*, No. Civ. A 05-662, 2005 WL 1431510, at *3 (E.D. La. June 9, 2005); *Crutchfield v. Ringer Assocs. New Orleans, Inc.*, No. Civ. A. 01-2720, 2002 WL 726646, at *3 (E.D. La. Apr. 24, 2002); *Michel v. Miller*, No. Civ. A. 97-2419, 1998 WL 42887, at *3 (E.D. La. Jan. 30, 1998).
[18] R. Doc. 1-13, ¶XVI, XVII.
[19] *See Horaist*, 255 F.3d at 267 (finding attorney was not necessary witness where testimony would be cumulative of other witnesses' testimony).

5

The second reason deLaunay should not be disqualified is that "the extant ethical rules do not operate to disqualify [lawyers] from acting as advocates in pretrial proceedings."[20]  Louisiana Rule 3.7(a) and its Model Rule counterpart plainly state that the proscription against a lawyer serving as both witness and advocate applies only when a "lawyer . . . act[s] as advocate *at a trial*."[21]  Courts in the Eastern District have long recognized this distinction.[22]

Third, the Fifth Circuit has cautioned that where, as here, an adverse party challenges another party's choice of counsel, the challenge "should be viewed with caution . . . for it can be misused as a technique of harassment."[23]  Moreover, it appears the testimony Gibbens, Basin, and Black Diamond intend to elicit from deLaunay will only prejudice his client, QRT.  "[W]hen the attorney's participation as both lawyer and witness stands to prejudice only his own client, the opposing attorney should have no say in the matter."[24]

Fourth, deLaunay's testimony may be protected by attorney-client privilege. In diversity cases such as this one, the law governing attorney-client privilege is supplied by the forum state.[25]  Under Louisiana law, a client may prevent another person from disclosing "a confidential communication . . . made for the purpose of facilitating the rendition of professional legal services to the client" when, *inter alia*, the communication is "[b]etween the client or a representative of the client and the client's

---

[20] *CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*, No. 09-6623, 2010 WL 2773116, at *2 (E.D. La. July 9, 2010).
[21] La. Rules of Prof'l Conduct 3.7(a); Model Rules of Prof'l Conduct 3.7.
[22] *See, e.g., id.*; *P & J Daiquiri*, 2008 WL 731030, at *2 ("[T]here is no prohibition against [an attorney who may be a necessary witness] representing the client in pre-trial matters."); *Jackson v. Adcock*, No. Civ. A. 03-3369, 2004 WL 1661199, at *4 (E.D. La. July 22, 2004).
[23] *See U.S. Fire Ins. Co.*, 50 F.3d at 1315.
[24] *Horaist*, 255 F.3d at 267 (citing *U.S. Fire Ins. Co.*, 50 F.3d at 1315).
[25] *See In re Avantel, S.A.*, 343 F.3d 311, 323 (5th Cir. 2003); Fed. R. Evid. 501.

6

lawyer or a representative of the lawyer."[26]  It appears all or most of the communications cited in the motions to disqualify were made by deLaunay to QRT in his capacity as lawyer.[27]  Whether deLaunay's prospective testimony is privileged is a question of fact best decided after the substance of his testimony and the surrounding circumstances have been developed through discovery.[28]

For the foregoing reasons, the motions to disqualify are denied without prejudice. The motions may be re-urged closer to trial when it has become more clear whether deLaunay will be a necessary witness at trial, and, if so, whether his testimony will be subject to attorney-client privilege.[29]

II.   Motion to Strike

QRT moves to strike Exhibits 1 and 5 as privileged attorney-client communications.  Gibbens has not disputed the communications are privileged.  Rather, he argues QRT has waived the privilege.

A. *Exhibit 1*

Gibbens argues QRT has waived any assertion of attorney-client privilege on Exhibit 1 by placing the Exhibit at issue.  "Placing-at-issue waiver occurs when a privilege-holder pleads a claim or a defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail.[30]

Exhibit 1 is an email from deLaunay to various QRT representatives in which deLaunay discusses the Basin Offer.  Gibbens is carbon-copied on the email.  Gibbens argues that by asserting a counterclaim against him for misusing confidential

---

[26] La. Code Evid. art. 506B(1).
[27] deLaunay has provided an affidavit to this effect.  *See* R. Doc. 46-1, p. 5.
[28] *Cf. In re Auclair*, 961 F.2d 65, 68 (5th Cir. 1992) ("The application of the attorney-client privilege is a question of fact . . . .") (internal quotation marks omitted).
[29] *See Douglas*, 2005 WL 1431510 (denying motion to disqualify as premature).
[30] *Smith v. Kavanugh, Pierson & Talley*, 513 So. 2d 1138, 1145 (La. 1987) (emphasis added).

information, QRT has committed itself to a course of action that will require disclosure of "[c]onfidential information connected with the operation of QRT and the sale of the company, its trade secrets, [and] the company's value."[31]

The Court disagrees. As the Louisiana Supreme Court stressed repeatedly in *Smith*, the privilege-holder must make a claim or defense that "inevitably" requires the introduction of privileged communications.[32] deLaunay's email regarding sale negotiations with Basin is not *inevitably* needed to support QRT's claim that Gibbens misused confidential information to form a joint venture with Basin. The test is not one of relevance, but of genuine necessity.[33] Gibbens's interest in Exhibit 1 does not override "the general interest of the system of justice in maintaining the privilege."[34]

Exhibit 1 is a privileged communication. QRT has not waived the privilege. Exhibit 1 must be stricken from the record.

    B. *Exhibit 5*

Gibbens argues Exhibit 5 is admissible on two grounds: (1) voluntarily disclosure during discovery, and (2) "placing-at-issue waiver." Under Article 502(A) of the Louisiana Code of Evidence, a privilege-holder waives a privilege if he or she "voluntarily discloses or consents to disclosure of any significant part of the privileged matter."[35]

The issue of voluntary disclosure requires some backstory. While this case was still pending in state court, Gibbens produced Exhibit 5 to QRT. During the discovery period following removal to this Court, Gibbens propounded a request for production of

---

[31] R. Doc. 50, p. 8.
[32] *See Smith*, 513 So. 2d at 1144–45.
[33] *See id.* at 1144–45.
[34] *Id.* at 1145.
[35] La. Code Evid. 502(A).

documents on QRT.[36]  QRT provided several emails responsive to this request, including Exhibit 5.[37]

QRT argues it did not voluntarily disclose Exhibit 5, because Gibbens already had the document in his possession.  QRT cites no legal authority for this proposition, nor can the Court find any.  That QRT knew Gibbens had the document yet failed to assert privilege actually cuts *against* QRT's argument.  Further compounding this error was QRT's voluntary production of Exhibit 5 post-removal.  QRT once again had an opportunity to assert privilege but chose not to do so.  Under these circumstances, the Court finds QRT has failed to carry its burden of demonstrating the privilege was not waived.[38]  QRT may not assert attorney-client privilege on Exhibit 5.[39]

## CONCLUSION

For the reasons previously stated, the Motions to Disqualify are denied without prejudice and may be re-urged at a later date.  The Motion to Strike is granted in part, and Exhibit 1 will be stricken from the record.

**New Orleans, Louisiana, this 11th day of March, 2015.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[36] R. Doc. 50-3.
[37] *See id.*
[38] *See Jefferson Parish v. Waste Mgmt. of La., L.L.C.*, No. 09-6270, 2011 WL 3512078, at *7 (E.D. La. Aug. 11, 2011) (noting the privilege-holder bears "the burden of establishing the applicability of the attorney/client privilege *and* that it has not been waived.").
[39] Accordingly, the Court need not address Gibbens's alternative argument for waiver under the "placing at issue" doctrine.